# In the United States Court of Federal Claims

No. 11-123C

Filed: August 24, 2012

| | | |
|---|---|---|
| * * * * * * * | | |
| OVERSEAS LEASE GROUP, INC., * | | Contract Disputes Act; RCFC 56(a), Cross Motions for Summary Judgment; Breach of Contract; Contract Interpretation; Ambiguity; Extrinsic Evidence; FAR 52.217-8, Option to Extend Services |
| <u>Plaintiff</u>, * | | |
| v. * | | |
| THE UNITED STATES OF AMERICA, * | | |
| <u>Defendant</u>. * | | |
| * * * * * * * | | |

*Paul Farid Khoury*, Wiley Rein, LLP, Washington, DC, for plaintiff.

*Michael Paul Goodman*, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## ORDER AND OPINION

**HODGES, Judge.**

Defendant contracted with Overseas Lease Group (OLG) to lease vehicles for Department of Defense operations in Afghanistan. Plaintiff alleges that the Government breached the contract by failing to compensate OLG for damage to returned vehicles and by issuing short-term leases that did not comply with the minimum contract term. The parties filed motions for summary judgment on Counts I, II, and III. We grant plaintiff's motions for the reasons stated below.

## BACKGROUND

The Government awarded plaintiff Overseas Lease Group an indefinite delivery, indefinite quantity contract for the lease of vehicles to the United States Army in Afghanistan. The contract provided for a one-year base period and four one-year options. The Government exercised its option to extend the contract three times, but did not exercise the fourth option.

Plaintiff alleges in Counts I and II of its Complaint that defendant breached its obligations under the contract by failing to repair the returned leased vehicles and refusing to pay for damages. The issues raised by Count I and Count II are substantially similar. Count I applies to vehicles

returned to plaintiff before the parties modified the contract in April 2008 to alter defendant's obligations with respect to the condition of the returned vehicles. Count II makes essentially the same allegations for vehicles returned after the modification. Count III alleges that defendant issued leases that did not comport with the contract's twelve-month minimum lease-term requirement.

The contract provision governing return of vehicles is Section 6.1; that is the section amended by the parties effective May 1, 2008. Thereafter, the Government was no longer liable for actual repairs, but was required to pay the cost of excess wear and tear damage plus one additional month's lease payment for each damaged vehicle returned. After the revision, however, the Government returned additional vehicles without compensating plaintiff for damages. Defendant does not dispute that vehicles were returned damaged, but argues that it is not responsible for the costs according to the language of the contract.

Plaintiff filed a motion for summary judgment on the issue of entitlement as to Counts I and II. Defendant cross-moved on Counts I and II, then filed a motion for summary judgment on Count III. Plaintiff responded with a cross-motion for summary judgment on Count III.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A responding party may not merely deny that a fact is true or is genuinely disputed, but "must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, . . . affidavits or declarations, . . . or other materials." RCFC 56(c)(1); *see also Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562-63 (Fed. Cir. 1987) ("The non-movant may not rest on its conclusory pleadings but, . . . must set out . . . what specific evidence could be offered at trial."). Normally, a contract ambiguity will not be resolved on summary judgment. *See Beta Systems, Inc. v. United States*, 838 F.2d 1179, 1183 (Fed. Cir.1988) ("To the extent that the contract terms are ambiguous, requiring weighing of external evidence, the matter is not amenable to summary resolution.").

### DISCUSSION

Count I applies to leased vehicles returned to OLG before the parties modified the contract effective May 1, 2008, to alter defendant's obligations with respect to the condition of the returned vehicles. According to OLG, defendant returned nearly 150 vehicles to plaintiff between September 2007 and April 2008 without first repairing them as the contract required. Count II makes essentially the same allegations for an additional 160 vehicles returned after May 1, 2008, the date of the modification. Count III alleges that defendant issued leases that did not comport with the twelve-month minimum lease term requirement found in the contract.

### COUNT I

Plaintiff's Count I alleges that the Government breached Section 6.1 of the contract as it

appeared before the modification in May 2008.[1]  Section 6.1 applies to procedures and obligations of the parties upon return of leased vehicles by the Government to OLG. Section 6.1 reads as follows:

> Returning. Any damages the U.S. Government is responsible for will be repaired to the condition received before returning the vehicle back to the leasing agent at a fair and reasonable price. The U.S. Government is only liable for damages and repairs if the vehicle was in the possession of a government personnel. The Government is not responsible for damages accepted on the 'Initial Delivery and Acceptance Inspection Checklist' (Attachment A), as these damages existed before the U.S. Government received the vehicle. A joint contractor/government inspection shall be performed on the vehicle. The inspection shall be documented on Attachment C, 'Vehicle Inspection, Returned to Leasing Agent' checklist with photos (if applicable) and both parties will retain a copy.

Section 6.1.

Defendant complains that plaintiff required that vehicles be "refurbished" upon return, rather than repaired. Plaintiff responds that the contract term, "to the condition received," includes work that would include repair and refurbishment, and that in any case, defendant's argument would affect only the quantum of plaintiff's judgment, not the question of entitlement at issue in this round of briefing. Irrespective of the labels either party wishes to place on the costs of repair, the Government was obligated under the contract to repair the vehicles "to the condition received." If some of those repair costs qualify as "refurbishment," that does not conflict with the language of Section 6.1.

Defendant does not dispute plaintiff's contention that the Government returned damaged vehicles without repairing them in violation of Section 6.1. Instead, it asserts that another provision of the contract limits defendant's liability for damages to those caused by government negligence. Section 2.2, Vehicle Acceptance, contains such language. Overseas did not allege negligence on the part of the Government, and therefore it cannot recover for the Government's breach, according to defendant. Section 2.2 reads as follows:

> Vehicle Acceptance. The government will only be liable for future damages caused by negligence of U.S. personnel. A joint contractor/government inspection shall be performed on all vehicles and equipment before acceptance. The inspection shall be documented on Attachment A, 'Vehicle Inspection, Initial Delivery' checklist with photos (if applicable) and both parties will retain a copy. A copy of the warranty will

---

[1] "To recover for breach of contract, a party must allege and establish: (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989).

be provided upon delivery of the vehicle. All discrepancies must be fixed prior to final acceptance. . . .

Section 2.2.

Plaintiff contends that the negligence language does not apply to the return of vehicles, but that if it does, the provisions of 2.2 and 6.1 create an ambiguity in the contract because 2.2 requires government negligence for the lessor to recover damages, while 6.1 does not mention negligence. Therefore, the court must consider extrinsic evidence consisting of the parties' contemporaneous interpretation of these provisions; such evidence will demonstrate that a negligence standard was not intended to apply, plaintiff asserts. Moreover, plaintiff argues that a negligence standard would not affect defendant's liability, but only the amount of damages to which plaintiff is entitled. This is because defendant does not dispute that the Government returned damaged vehicles without repairing them in violation of Section 6.1. Its only defense is that such damages must be a result of government negligence.

Defendant's case law shows that the two provisions must be reconciled if possible, so as to "give meaning and purpose to every term used in the contract." *Grumman Data Sys. Corp. v. Widnall*, 15 F.3d 1044, 1048 n.4 (Fed. Cir. 1994) (quoting *Intel Corp. v. Int'l Trade Comm'n*, 946 F.2d 821, 826 (Fed. Cir. 1991). Also, the provisions "should not be interpreted as conflicting with one another unless there is no other possible reasonable construction of the language." *Int'l Transducer Corp. v. United States*, 30 Fed. Cl. 522, 526 (1994) (citing *Hol–Gar Mfg. Corp. v. United States*, 169 Ct.Cl. 384, 395 (1965)). A reasonable interpretation must "assure that no contract provision is made inconsistent, superfluous, or redundant." *Medlin Constr. Group, Ltd. v. Harvey*, 449 F.3d 1195, 1200 (Fed. Cir. 2006) (quoting *Lockheed Martin IR Imaging Sys., Inc. v. West*, 108 F.3d 319, 322 (Fed. Cir. 1997)).

"Contract interpretation begins with the plain language of the agreement." *Foley Co. v. United States*, 11 F.3d 1032, 1034 (Fed. Cir. 1993) (citing *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991)). "[E]xtrinsic evidence . . . may not be considered unless an ambiguity is identified in the contract language." *City of Tacoma, Dep't of Pub. Utils.*, 31 F.3d 1130, 1134 (Fed. Cir. 1994) (citing *Sylvania Elec. Prods., Inc. v. United States*, 198 Ct. Cl. 106 (1972)).

The alleged ambiguity in this case results from an apparent conflict of one term with another, rather than from a poorly drafted agreement that contains one or more provisions that have more than one reasonable interpretation. Section 6.1 requires that defendant return leased vehicles to plaintiff at the end of the lease term, in the same condition as it received them. Section 2.2 applies to the condition of the vehicles when they are first delivered to the Government at the beginning of the lease. Read this way, Section 6.1 and Section 2.2 are reasonably clear and entirely consistent with each other and with the meaning and purpose of the contract.

Section 6.1 addresses the Government's return of vehicles, stating that defendant was responsible for repairing damaged vehicles "to the condition received." The Government was "liable

for damages and repairs [upon return] if the vehicle was in the possession of a government personnel." Section 2.2 is not positioned so that it applies to return of vehicles; it is located several pages earlier in the contract, where it describes the conditions under which the Government accepts vehicles initially. The first sentence of Section 2.2 states that defendant "will only be liable for future damages caused by negligence of U.S. personnel." This relates to defendant's acceptance of the vehicles at the beginning of the lease. Had the parties intended to apply a negligence standard to the Government's liability for returning damaged vehicles, 6.1 would have included such important language. Section 2.2 contains a reference to defendant's negligence that cannot be applied to the Section 6.1 requirement that defendant return vehicles in the condition received.

The language in 2.2 whereby defendant accepts liability for future damages that resulted from government negligence, highlights defendant's understandable position that it should not have to pay for damages that were on the vehicle when the Government took possession. Its intention was to pay only for damages that it added to the vehicle.

The only reasonable interpretation of the contract is one that gives effect to Section 6.1 for its purpose – to control the conditions under which the Government is liable for the return of vehicles that were damaged in its possession – and Section 2.2 for its purpose: to control the conditions under which the Government is liable for damages to vehicles that had occurred before defendant took possession of them – at the beginning of the lease.

The Government has raised no genuine issue of material fact as to OLG's entitlement to recover under Count I. It returned damaged vehicles to OLG for which OLG has not been compensated as the contract requires. A negligence standard does not apply to valuing OLG's damages.

Because of these and other disputes surrounding the lease program, defendant sought a modification of Section 6.1., to clarify its responsibility for damages to returned vehicles.[2] The opportunity for a clarifying amendment to the contract arose when the Government exercised its option to extend the contract.

COUNT II

Plaintiff alleges in Count II that the Government refused to pay for necessary repairs to returned vehicles pursuant to Section 6.1 – this time for returns made after May 1, 2008, when a

---

[2] A contracting officer's memorandum to the file explains: "Before exercising Option Year 2 we needed to open discussions about the current return policy of the vehicles. Under the original [Statement of Work] it states that we cannot turn the vehicles back into the leasing agent until they are in the condition we received them in. Essentially the wording was stating that returned vehicles will be in new condition when returned to OLG. This wording has lead to a large repair bill of Task Order 0031 which to date is still unresolved."

contract modification took effect. OLG obtained estimates for the repairs, and sent them to defendant in invoice form. The revised version of the Section 6.1 "Returning" provision of the contract stated that defendant would be liable only for "excess wear and tear" to vehicles. The Government would make an additional one month's lease payment upon return of the vehicles, to compensate for delays.

A government official explained that the reason for the extra month's lease payment was to compensate OLG for the time it would take to repair damages before releasing a vehicle – previously the Government was supposed to return vehicles in that condition.

The modification states as follows:

Returning. Appraisal report 21 days unless delay by shop

Excess Wear and Tear:
6.1a. 'Excess wear and tear' includes (a) glass that is damaged or that Lessee has tinted or altered; (b) damaged body parts, metal work, lights, trim or paint not covered by an insurance policy; (c) missing Equipment that was in the vehicle when delivered and has not been replaced with Equipment of equal quality and design; (d) missing wheel covers, jack or wheel wrench; (e) missing or unsafe wheels or tires (including spare; snow tires are not acceptable); (f) any tire with less than 1/8 inch of tread remaining at the shallowest point; (g) torn, damaged, or stained dash, floor covers, seats, heading, upholstery, interior work, or trunk liners; (h) any mechanical damage or other condition that causes the vehicle to operate in an improper, unsafe, or unlawful manner; and (j) any other body damage or missing body parts, whether or not covered by insurance.

"Excess wear" will be determined upon the vehicle inspection and recorded on Attachment C at lease end, and compared to the delivery condition report (Attachment A) completed at lease inception.

Final Invoice: Final invoice shall include 6.1a expenses and an additional one (1) month's lease payment amount for each vehicle returned under this Paragraph 6.1.

Changes effective: 01 May 2008

Section 6.1a.

Defendant does not deny that it returned damaged vehicles or that it has not paid plaintiff's invoices. However, it argues that the section following 6.1 also applies, and should have been invoked. The full text of the section follows:

Reimbursement. If a vehicle has been damaged in the Government's possession and

the cost of vehicle maintenance and/or collision repair is 75% or more than the actual value of the vehicle, the contractor(s) will be reimbursed the actual value of the vehicle minus depreciation. The vehicle's actual value may be determined by the Kelly Blue Book . . . or based on the purchase receipt minus depreciation, whichever is the lowest. The Government will consider the Afghanistan conditions when depreciating the value of the vehicle. The contractor(s) will be required to provide the Government the original purchased invoice for the damaged vehicle. Once reimbursed, the damaged vehicle will be the property of the U.S. Government. The damage may be caused by act of terrorism, war, or an accident, but not through normal wear and tear.

Section 6.2.

Plaintiff refused to provide purchase receipts for its vehicles to the Government because it believed that 6.2 did not apply to its requests for payment. OLG sought recovery under Section 6.1 alone. The purchase receipts became the subject of a motion to compel in this action, and subsequently they were provided to the Government. Defendant argues that plaintiff waived its right to invoke 6.2, and is now barred from recovering the "totalled" value of the vehicles at issue. Plaintiff responds that defendant's contentions here, even if they are valid, affect only the amount of damages for which the Government is responsible.

Section 6.2 applies to any vehicle with repair costs of seventy-five percent or more of its actual value; we cannot agree that plaintiff has somehow waived its right to recover under this section by not invoking it sooner. Section 6.2 appears immediately after the "Returning" section of the contract and compliments the method for recovery under 6.1. The two provisions work in concert. Common sense dictates that a vehicle with repairs exceeding a majority of the vehicle's value would give the lessee an option to pay the value instead of the repair costs. Defendant has not provided a persuasive argument for ignoring that reasonable provision in this case.

Overseas also argued against the applicability of section 6.2, pointing to the last sentence of the section, which states, "[t]he damage may be caused by act of terrorism, war, or an accident." OLG states that the damages for which it seeks recovery were not caused by terrorism, war, or accident, and therefore, 6.2 does not apply. The Government insists that the damages were from acts of terrorism or war. The term "accident" is broad enough to encompass almost any cause of damage to the vehicles at issue. The sentence reads that the damages may be caused by terrorism, war, or accident.

The Government argues that the sentence, "[o]nce reimbursed, the damaged vehicle will be the property of the U.S. Government," in 6.2, renders the provision impossible to apply now. The parties agree that the Government will not be able to take possession of the vehicles in question, as OLG has sold or released most of them. However, this reality is not fatal to the application of Section 6.2. The cost and the value of taking possession of the totalled vehicles can be accounted for in the valuation of damages phase of this litigation.

Defendant contends that OLG did not classify its damages as excess wear and tear properly, and is trying to recover for damages that are not described by the enumerated categories. OLG insists that all of its damages do qualify as excess wear and tear. This question can be resolved in the damages phase of this litigation. The Government has raised no genuine issue of material fact as to OLG's entitlement to recover under Count II. It returned damaged vehicles to OLG for which OLG has not been compensated as the contract requires. Count III requires interpretation of a section that implicates Federal Acquisition Regulations, different from the issues in dispute so far.

## COUNT III

Count III of plaintiff's Complaint involves a section of the contract which provides that all leases issued under the contract be for a minimum term of twelve months. Plaintiff alleges that the Government forced OLG to accept lease renewals on sixty-seven vehicles for terms of less than one year in violation of that term. The parties agree that all leases issued under the contract must be for a minimum term of twelve months. Defendant issued the short-term leases between June and November 2009, when nine months of performance and one additional option year remained on the contract. The Government filed a motion for summary judgment that its issuance of short-term lease extensions did not breach the contract.

Defendant asserts that the short-term leases were permitted extensions of existing leases pursuant to an incorporated FAR provision, Option to Extend Services:

> The Government may require continued performance of any services within the limits and at the rates specified in the contract. These rates may be adjusted only as a result of revisions to prevailing labor rates provided by the Secretary of Labor. The option provision may be exercised more than once, but the total extension of performance hereunder shall not exceed 6 months. The Contracting Officer may exercise the option by written notice to the Contractor within 30 days.

FAR 52.217-8.

The purpose of the FAR clause is to protect contracting agencies from being "forced to negotiate short extensions" to expiring contracts at potentially higher prices, particularly when performance of the follow-on contract is delayed. 54 Fed. Reg. 29278-01 (July 11, 1989); *see also Arko Exec. Servs., Inc. v. United States*, 553 F.3d 1375 (Fed. Cir. 2009) (holding where the Government used the same FAR provision to extend a contract for one month beyond the contract's expiration to insure continued performance until the follow-on contract was ready was "exactly the situation FAR 52.217-8 was written to address").

Plaintiff contends that the provision is not applicable where the contract is still active, as in this case. Defendant states that nothing in the plain language of the provision limits its operation in such a way.

FAR 52.217-8 does not apply to the facts of this case. Defendant did not require "continued performance of . . . services within the limits and at the rates specified in the contract." The short-term leases it demanded occurred within the confines of the original contract. The Government had exercised a one-year option only three months before. Leases issued pursuant to the FAR clause would have been executed for additional twelve-month terms, the limits specified in the contract, at contract rates.

Defendant argues in the alternative that the short-term leases were "new procurements." *See AT&T Commc'ns, Inc.v. Wiltel, Inc.*, 1 F.3d 1201 (Fed. Cir. 1993). However, the disputed task orders were not sufficiently different from the original contract to constitute a material departure from the original contract and therefore new procurements. A new contract or procurement must constitute a material departure from the original scope, or a "cardinal change." *See id.* at 1205. The lease renewals were not different from previous contract leases except in their shorter terms. Because they do not qualify as material departures, the leases should have been made subject to the limits and other terms of the contract in place.

## COUNT III – DAMAGES

Plaintiff contends that the Government should pay its damages based on the difference between the value of the short-term leases and the value of those leases had they been issued for twelve months. According to defendant, such a measure of damages would be illegal, citing another FAR provision, also incorporated into the contract, for support:

> (a) Upon the submission of proper invoices or vouchers, the Government shall pay rent for each vehicle at the rate(s) specified in this contract.
> (b) Rent shall accrue from the beginning of this contract, or from the date each vehicle is delivered to the Government, whichever is later, and shall continue until the expiration of the contract term or the termination of this contract. However, *rent shall accrue only for the period that each vehicle is in the possession of the Government.*

FAR 52.208-4 VEHICLE LEASE PAYMENTS (emphasis added).

Plaintiff's and defendant's comments on means of calculating damages for the Government's breach are distinct from current issues of entitlement; we are addressing their disputes on how the parties should have conducted their performance of the contract. This is a ruling solely on entitlement; the court will assess resulting damages in a separate proceeding.

## **CONCLUSION**

We urge counsel to consider settling this case on an equitable basis, in light of the reasonable claims on both sides. Plaintiff's and defendant's arguments have merit, and attributing values to each may not be a routine matter. The court has constraints in determining such values for

9

entry of judgments, while the parties have no such limitations in crafting a fair settlement.

Plaintiff's motions for summary judgment on entitlement as to Counts I and II are GRANTED. Defendant's cross motions on Counts I and II are DENIED. Defendant's motion for summary judgment on Count III is DENIED; plaintiff's cross motion is GRANTED. Counsel will file a status report no later than September 7 advising the court how they propose to proceed.

IT IS SO ORDERED.

s/Robert H. Hodges, Jr.
Robert H. Hodges, Jr.
Judge
